UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LYNN T. PASLEY,

                    Petitioner,

v.                                              CASE NO. 04-CV-71020-DT
                                                HONORABLE JOHN CORBETT O'MEARA
KENNETH ROMANOWSKI,

                    Respondent.
_____/

**OPINION AND ORDER GRANTING
RESPONDENT'S MOTION FOR ENLARGEMENT OF TIME
AND
DENYING PETITION FOR WRIT OF HABEAS CORPUS**

        This matter is pending before the Court on petitioner Lynn T. Pasley's *pro se* application

for the writ of habeas corpus under 28 U.S.C. § 2254.  Also pending before the Court is

respondent Kenneth Romanowski's motion for an enlargement of time to file the state court

record, which the Court received on July 15, 2005.  Respondent's motion is granted.  The habeas

petition, however, must be denied, because Petitioner's claims lack merit.

**I.  Background**

        Following a bench trial in 1998, Petitioner was convicted of armed robbery, Mich. Comp.

Laws §750.529.   The conviction

            arose from an armed robbery that occurred on Park Street in Detroit.  On February
            8, 1997, between 9:15 p.m. and 9:30 p.m., complainant, Greg Pitts, parked his car
            on Park Street and began walking toward the State Theater on Woodward
            Avenue, where he was employed as a security guard.  Pitts claimed that as he
            neared Woodward Avenue, three men walking toward him stopped him and
            forced him to the ground.  One of the men hit Pitts on the back of the head with
            the flashlight that Pitts was carrying.  The men then took Pitts' wallet, necklace,
            watch and ring. Pasley, [Larry] Williams, and a third man . . . were arrested soon

after in the vicinity of where the attack occurred.

*People v. Pasley*, No. 210712, at 1-2 (Mich. Ct. App. July 11, 2000).[1]  On January 30, 1998, the

trial court sentenced Petitioner as a habitual offender to a term of fifteen to thirty years in prison.


On appeal from his conviction, Petitioner argued that (1) the prosecution presented

insufficient evidence, (2) the trial court erroneously admitted identification evidence, (3) his

motion for severance should have been granted, (4) a co-defendant's confession was erroneously

admitted in evidence, (5) his waiver of a jury trial was involuntary and invalid, and (6) trial

counsel was ineffective because he did not attempt to procure the results of a blood test.

The Michigan Court of Appeals was unpersuaded by Petitioner's claims and affirmed his

conviction and sentence.  *See id.* at 5.

Petitioner raised the first five claims enumerated above in the Michigan Supreme Court.

He also raised two new issues:  (1) trial counsel failed to argue the lack of probable cause for the

arrest and (2) the prosecutor invited the jury to consider the inadmissible confession of James

Harrison.  On February 26, 2001, the supreme court denied leave to appeal.  *See People v.*

*Pasley*, 463 Mich. 973; 623 N.W.2d 600 (2001) (table).

On October 29, 2001, Petitioner filed a motion for relief from judgment in which he

alleged that (1) the prosecutor engaged in misconduct by using the inadmissible statement of a

co-defendant, (2) trial counsel failed to challenge Petitioner's arrest, and (3) appellate counsel

was ineffective for not raising these issues on direct appeal.  The trial court denied Petitioner's

---

[1]  The three suspects (Petitioner, Larry Williams, and James Harrison) were tried together
in Wayne County Circuit Court.

2

motion, and the Michigan Court of Appeals denied leave to appeal the court's decision, because

Petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D).  *See*

*People v. Pasley*, No. 247593 (Mich. Ct. App. Sept. 4, 2003).  On January 27, 2004, the

Michigan Supreme Court denied leave to appeal for the same reason.  *See People v. Pasley*, 469

Mich. 1003; 675 N.W.2d 594 (2004) (table).

Petitioner's habeas corpus petition is dated March 1, 2004.  The issues are:

I.      Since Mr. Pasley's waiver of jury trial was not valid and
        voluntarily entered nor knowingly and intelligently made, this
        court must reverse Mr. Pasley's conviction because it was obtained
        in violation of his federal and state rights to due process and a fair
        trial.

II.     Was it constitutional error to allow into evidence Mr. Pitt's
        impermissibly suggestive and unreliable eye-witness testimony,
        which violated Petitioner's right to a fair trial?

        A.      The prosecutor has failed to show by clear and
                convincing evidence that a positive in-court
                identification by Mr. Pitts was sufficiently reliable
                despite the invalid identification procedure.

        B.      The court of appeals unreasonably applied clearly
                established federal law when the court concluded
                that the admission of Mr. Pitts identification
                testimony of Petitioner was harmless.

III.    Since the prosecution presented insufficient evidence to convict
        Mr. Pasley, was he denied his federal and state rights to a fair trial
        and due process of law, and should his conviction be reversed?

IV.     When co-defendant Harrison's confession to the police, which
        implicated Mr. Pasley was admitted at trial absent co-defendant
        Harrison's testimony, was this inadmissible hearsay introduced
        against Mr. Pasley in violation of his federal and state
        constitutional right to confrontation of the witness and did it
        violate his rights to due process and a fair trial?

V.      Since Judge Sapala erred by not granting Mr. Pasley's motion for

3

severance based on antagonistic defenses, Mr. Pasley was denied his rights to a fair trial and due process under the federal and state constitutions.

VI.     The prosecutor deprived Petitioner of his state and federal constitutional due process rights to a fair trial by engaging in repeated and prejudicial acts of misconduct by constantly using the inadmissible statement of co-defendant Harrison against Petitioner.

VII.    Was Petitioner deprived of his due process rights and effective assistance of counsel when counsel failed to challenge the probable cause of Petitioner's arrest?

Respondent urges the Court to deny relief on the ground that Petitioner's claims are procedurally defaulted or without merit.

## II.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but

4

unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original).

> Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Finally, review is conducted in light of the law as it existed at the time of the final state court decision, *Teague v. Lane,* 489 U.S. 288 (1989), unless an intervening constitutional decision announces a 'watershed' rule of criminal law with implications for the fundamental fairness of the trial proceeding. *Caspari v. Bohlen,* 510 U.S. 383, 396 (1994).

*Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, __ U.S. __, 125 S. Ct. 1670 (2005).

## III.  Discussion

### A.  Waiver of a Jury Trial

The first habeas claim alleges that Petitioner's waiver of a jury trial was not voluntarily and intelligently made. Petitioner contends that neither the trial court, nor his attorney, advised him that he had a constitutional right to a jury trial. Petitioner further contends that the trial court failed to comply with Michigan Court Rule 6.402(B), which requires trial courts to advise the defendant in open court of the constitutional right to trial by jury and to ascertain whether the defendant understands the right and voluntarily chooses to waive the right.

The alleged violation of Rule 6.402(B) is immaterial, because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated

the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam)."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

The constitutional question is whether Petitioner's waiver was "an intentional relinquishment or abandonment of a known right or privilege."  *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).  A determination of whether there has been an intelligent waiver of a constitutional right must depend on the relevant facts and circumstances.  *Id*.

Petitioner signed a written waiver of his right to a jury trial on the first day of trial.  His signature on the form follows a statement which reads,

> I, having had an opportunity to consult with counsel, do hereby in open Court voluntarily waive and relinquish my right to a trial by jury and elect to be tried by a judge of the above named Court, in which this cause is pending.
>
> I fully understand that I have a constitutional right to a jury trial.

Ans. in Opposition to Pet. for Writ of Habeas Corpus, Ex. A.  Petitioner's attorney signed the same form after affirming that he had advised Petitioner of his constitutional right to a trial by jury.  *See id*.

The trial court subsequently questioned the three defendants about their waiver of a jury trial.  Petitioner assured the trial court that it was his desire to waive a trial by jury and to have the court sit as the trier of fact.  (Tr. Jan. 12, 1998, at 5-6.)  The trial court accepted Petitioner's waiver, and the Michigan Court of Appeals concluded on review of Petitioner's claim that the trial court did not err in determining that Petitioner validly waived his right to a jury trial.

In light of Petitioner's written waiver and his response to the trial court's question, this Court concludes that Petitioner's waiver of the right to a jury trial was voluntary and intelligent.  Therefore, the state courts' conclusions regarding the voluntariness of Petitioner's waiver were

neither contrary to, nor unreasonable applications of, clearly established federal law, and

Petitioner has no right to the writ of habeas corpus on the basis of his first claim.

### B. The Pretrial Identification

The second habeas claim alleges that the pretrial line-up was invalid and unduly

suggestive, giving rise to a substantial likelihood of irreparable misidentification in violation of

Petitioner's right to due process. Petitioner and one of his co-defendants, Larry Williams,

participated in the line-up and were identified by the complainant as two of the robbers.

### 1.  Relevant Case Law

The United States Court of Appeals for the Sixth Circuit has explained that

> [a] conviction based on identification testimony following pretrial
> identification violates the defendant's constitutional right to due process
> whenever the pretrial identification procedure is so "impermissibly suggestive as
> to give rise to a very substantial likelihood of irreparable misidentification."
> *Simmons v. United States*, 390 U.S. 377, 384 (1968). Because "reliability is the
> linchpin" of this analysis, *Manson v. Brathwaite*, 432 U.S. 98 (1977), courts have
> used two steps to find the use of identification testimony unconstitutional. First,
> the court evaluates the undue suggestiveness of the preidentification encounters.
> If the encounters were unduly suggestive, the court evaluates the "totality of the
> circumstances" to determine whether there was nevertheless sufficient
> independent indicia of reliability. *See, e.g., id.*; *Neil v. Biggers*, 409 U.S. 188,
> 199-200 (1972).

*Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir. 1986).

### 2.  The Line-up

The Michigan Court of Appeals adjudicated Petitioner's claim on the merits and

concluded that evidence regarding the line-up identification should have been excluded. The

court of appeals determined that a number of factors, when considered together, indicated that

the pretrial line-up was unduly suggestive as to Petitioner:

First, there is evidence that Pitts was told by the police that the perpetrators of the

7

crime would be included in the lineup.  Second, while the record does not contain
photographic evidence of the lineup for us to review, the transcript of the motion
hearing indicates that there were a number of differences in physical
characteristics of the lineup participants. For one, the ages of the participants
ranged from nineteen to the mid-fifty's. Pasley was aged 34 at the time of the
offense.  Most significantly, the transcript indicates that Pasley was the only
participant who wore dreadlocks.  Dreadlocks are a very unique and distinctive
hairstyle.  Pitts testified that one of the men who robbed him wore "braids . . .
wild hair" that was "real long."  Furthermore, the transcript indicates that three
out of the five lineup participants were bald.

*Pasley*, Mich. Ct. App. No. 210712, at 2.

The record supports the state court's conclusion that the pretrial identification procedure

was impermissibly suggestive.  The complainant informed the police after the robbery that one

of the men had braids or long, wild hair.  There were five men in the line-up, but Petitioner was

the only person with braids and "salt and pepper" hair; the rest of the men were bald.  In

addition, Petitioner was thirty-four years old at the time, but the other participants were nineteen,

forty-six, thirty-two, and fifty-two.   Petitioner was thin, but his co-defendant, who was in the

line-up, had a medium build, and the remaining three participants in the line-up were large men.

Furthermore, the complainant claimed that he was told the police had caught the perpetrators and

that he had to pick them out of a group of people.  (Tr. May 20, 1997, at 12, 18-22, 40-44.)  The

police officer who arranged the line-up admitted that she might have told the complainant that

the people who had robbed him would be in the line-up.  (*Id*. at 28.)

### 3.  Independent Indicia of Reliability

If an identification is reliable, it may be admitted even if the earlier confrontation

procedure was suggestive.  *Carter v. Bell*, 218 F.3d 581, 605 (6th Cir. 2000) (citing *Manson*, 432

U.S. at 114 and *Biggers*, 409 U.S. at 199).

Following *Biggers*, [courts] consider the following factors in evaluating

8

reliability:  1) the opportunity of the witness to view the defendant at the initial observation; 2) the witness' degree of attention; 3) the accuracy of the witness' prior description of the defendant; 4) the level of certainty shown by the witness at the pretrial identification; and 5) the length of time between the initial observation and the identification.  409 U.S. at 199-200.  The degree of reliability of the identification, as indicated by the above-stated factors, is to be considered in light of the degree of suggestiveness of the identification procedure and of the totality of the circumstances in determining whether due process requires suppression of the identification.  *See Manson*, 432 U.S. at 113-14.

*Id*.

The Michigan Court of Appeals determined that admitting the complainant's identification testimony was harmless error, given the existence of an independent basis for the complainant's in-court identification of Petitioner.  The court of appeals noted that:

Pitts had [an] opportunity to get a good view of Pasley during the assault, the lineup took place the day after the assault, and the description of Pasley given to the police was quite accurate.  *People v. Gray*, 457 Mich. 107, 116; 577 N.W.2d 92 (1998).  Furthermore, Pitts was quite confident both at the pretrial lineup and in court that Pasley was one of his attackers.  *Colon*, [233 Mich. App. 295, 305; 591 N.W.2d 692 (1998)].

*Pasley*, Mich. Ct. App. No. 210712, at 2.  The court of appeals concluded that, under the totality of the circumstances, there was "clear and convincing evidence that the in-court identification of Pasley was not undermined by the impermissibly suggestive pretrial lineup."  *Id*.

The record supports the state court's conclusion.  The complainant had a good opportunity to observe the robbers.  He was about five to ten feet away when he first saw them. He looked at them as he walked, and he had eye contact with them.  His attention apparently was good, because he stated that he could move his head and was aware of what was happening to him even as he was forced to crouch on the ground.  His mind was not clouded by drugs or alcohol.  Although it was dark outside, he was certain of his identification at the line-up, which occurred the day after the robbery, and at the suppression hearing about three months later.  The

9

complainant's description to the police was not detailed, but he did inform the police that one man wore a blue coat, another man wore a beige or tan coat, and one man wore a white coat. Petitioner admittedly was wearing a white coat on the night in question.

The Court agrees with the state court that, even if the pretrial identification was suggestive, the complainant's in-court identification was supported by sufficient independent indicia of reliability. Therefore, the state court's conclusion was not contrary to, or an unreasonable application of, Supreme Court precedent, and Petitioner has no right to habeas review on the basis of his second claim.

### C. Sufficiency of the Evidence

The third habeas claim alleges that the prosecution presented insufficient evidence to sustain the conviction. The Michigan Court of Appeals disagreed, but Petitioner contends that the state court's decision is not entitled to deference, because the court did not invoke the proper standard.

### 1. The Jackson standard

The Supreme Court has held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). After *Winship*, the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Woodby v. INS*, 385 U.S. [276, 282 (1966)] (emphasis added). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Johnson v. Louisiana*, 406 U.S. [356, 362 (1972)]. This familiar standard gives full play to

10

the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (footnote omitted) (emphasis in original).

Sufficiency-of-the-evidence claims must be viewed through the framework of 28 U.S.C. § 2254(d).  *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002), *cert. denied*, 537 U.S. 1004 (2002), *and cert. denied*, 539 U.S. 938 (2003).  Additionally, the constitutional standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Jackson*, 443 U.S. at 324 n.16.

In Michigan "[t]he elements of armed robbery are:  (1) an assault, (2) a felonious taking of property from the victim's person or presence, and (3) the defendant must be armed with a weapon described in the statute."  *People v. Johnson*, 206 Mich. App. 122, 123; 520 N.W.2d 672, 673  (1994).[2]  "Armed robbery is a specific intent crime for which the prosecutor must establish that the defendant intended to permanently deprive the owner of property."  *People v. King,* 210 Mich. App. 425, 428; 534 N.W.2d 534, 536 (1995).  Aiding and abetting encompasses "all forms of assistance rendered to the perpetrator of the crime and comprehends all words or

---

[2]  The armed robbery statute reads:

Sec. 529.  A person who engages in conduct proscribed under section 530 [robbery] and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years.  If an aggravated assault or serious injury is inflicted by any person while violating this section, the person shall be sentenced to a minimum term of imprisonment of not less than 2 years.

Mich. Comp. Laws § 750.529 (footnote omitted).

deeds which may support, encourage or incite the commission of a crime." *People v. Vicuna,* 141 Mich. App. 486, 495; 367 N.W.2d 887, 891 (1985), *disapproved of on other grounds by People v. Dalessandro*, 165 Mich. App. 569; 419 N. W. 2d 609 (1988).

### 2.   The State Court Decision

The Michigan Court of Appeals summarized the evidence as follows:

> Pitts [the complainant] testified that Pasley was among the men who forced him to the ground, and that Pasley told Pitts to "give me all you got." When Pasley grabbed Pitts' flashlight, Pitts explained that he then "covered up," knowing that he was about to be struck with the flashlight. Pitts also testified that either Pasley or Williams struck him on the head with the flashlight, causing a laceration that required stitches. After being struck, Pasley then took Pitts' gold necklace while Williams and the third man took his wallet, watch, and ring.

> Detroit Police Officers Karl Paul, DeWitt Shelton and Michael Green all testified that they observed the three defendants together and that Williams and the third man were handling Pitts' wallet. Officers Paul and Shelton both testified that Williams was also found to have possessed Pitts' jewelry and flashlight, the lat[t]er item having blood on it. Pitts identified Pasley as one of the perpetrators at a police lineup the day following the incident and identified him again at trial.

*Pasley*, Mich. Ct. App. No. 210712, at 3. The court of appeals acknowledged the trial court's superior opportunity to assess witness credibility and concluded that sufficient evidence was adduced to support Petitioner's conviction. *See id.*

Although the court of appeals did not cite *Winship* or *Jackson* in its decision, it applied the Jackson standard. The court of appeals was not required to cite Supreme Court cases, or even be aware of Supreme Court cases so long as its reasoning and result did not contradict Supreme Court cases. *Early v. Packer*, 537 U.S. at 8.

The evidence adduced at trial established that Petitioner was one of three people who assaulted the complainant and took the complainant's personal property. Either he or one of his

co-defendants was armed with an article that could be considered a dangerous weapon. The command, "Give me all you got," which was attributed to Petitioner, indicates that Petitioner intended to rob the complainant.

Although there were conflicting versions of the event in question, reviewing courts are not obligated to

> reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Ibid*.

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003).

In summary, a rational trier of fact could have concluded that the prosecution proved the elements of armed robbery beyond a reasonable doubt. The state court therefore did not contravene or unreasonably apply *Jackson*, and Petitioner is not entitled to habeas corpus relief on the basis of his third claim.

### D. A Co-Defendant's Confession

The fourth habeas claim alleges that co-defendant James Harrison's statement to the police should not have been admitted at trial, because Harrison did not testify and Petitioner was unable to cross-examine him. The sixth habeas claim alleges that the prosecutor deprived Petitioner of his state and federal constitutional rights to due process and a fair trial by using Harrison's inadmissible statement to establish Petitioner's identity as one of the robbers.

### 1. Procedural Default

Respondent alleges that both these claims are procedurally defaulted. According to

13

Respondent, Petitioner procedurally defaulted his fourth claim by not objecting at trial to the admission of Harrison's statement.  The Michigan Court of Appeals adjudicated Petitioner's fourth claim under a "plain error" standard of review because, in its opinion, Petitioner failed to object to the admission of James Harrison's statement to the police.  Petitioner's attorney, however, did assert during closing arguments that the trial court could not use Harrison's statement against Petitioner.  The attorney also objected when the prosecutor referred to Harrison's statement in the rebuttal argument.  (Tr. Jan. 15, 1998, at 64-65 and 73.)

Respondent maintains that Petitioner's sixth claim is procedurally defaulted because Petitioner did not raise the claim on direct review and all three state courts denied relief on the basis of Michigan Court Rule 6.508(D).[3]  The trial court, however, apparently construed Petitioner's prosecutorial-misconduct claim to allege that the police lacked probable cause to arrest Petitioner.  The court did not address the issue presented here, that is, whether the prosecutor deprived Petitioner of his constitutional rights by referring to James Harrison's statement.  *See* Pet. for Writ of Habeas Corpus, Exs. C and D.

For these reasons, the Court finds it questionable whether Petitioner procedurally defaulted his fourth and sixth claims.  It is at least arguable that the state courts did not rely on an adequate and independent state ground to deny relief.

Even if the fourth and sixth habeas claims are procedurally defaulted, "[p]rocedural default is not a jurisdictional bar to review on the merits."  *Howard v. Bouchard*, 405 F.3d 459,

---

[3]  Pursuant to Michigan Court Rule 6.508(D)(3), courts may not grant relief from judgment if the defendant alleges grounds for relief that could have been raised on appeal, unless the defendant establishes "good cause" for his failure to raise the claims earlier and "actual prejudice" or "a significant possibility that the defendant is innocent of the crime."

14

476 (6th Cir. 2005). In other words, "federal courts have the power to reach the merits

notwithstanding a state procedural default." *Batchelor v. Cupp*, 693 F.2d 859, 863 n.2 (9th Cir.

1982) (citing *Fay v. Noia*, 372 U.S. 391, 438 (1963)).

> "[I]n the habeas context, the application of the independent and adequate state
> ground doctrine," of which a procedural default is typically an instance, "is
> grounded in concerns of comity and federalism." [*Coleman v.* Thompson, 501
> U.S. 722, 730 (1991)] (contrasting habeas proceeding with [the Supreme] Court's
> direct review of a state court judgment). Thus, procedural default is normally a
> "defense" that the State is "obligated to raise" and "preserv[e]" if it is not to "lose
> the right to assert the defense thereafter." *Gray v. Netherland*, 518 U.S. 152, 166
> (1996); *see Jenkins v. Anderson*, 447 U.S. 231, 234, n. 1 (1980).

*Trest v. Cain*, 522 U.S. 87, 89 (1997). The Court, therefore, will excuse the alleged procedural

defaults and proceed to address the merits of claims IV and VI.

### 2. *Bruton*

The essence of claims IV and VI is that James Harrison's statement to the police should

not have been admitted at trial because Harrison did not testify and Petitioner had no opportunity

to cross-examine Harrison about his statement.[4] The Supreme Court held in *Bruton v. United*

---

The actual statement was read into the record as follows:

Question:     Have you had your constitutional rights read to you?

Answer:       Yes.

Question:     Do you understand your rights?

Answer:       Yes.

Question:     Did you know the two men you with?

Answer:       No. I met one of them at the N.S.O.

Question:     Which one?

15

*States,* 391 U.S. 123 (1968), "that a defendant is deprived of his rights under the Confrontation

---

| | |
|---|---|
| Answer: | The one without the braids, the crazy one. |
| Question: | When did you meet him? |
| Answer: | Yesterday night. |
| Question: | What did you do? |
| Answer: | We were just walking and then he met the other guy with the braids.  I did not know him. |
| Question: | Then what? |
| Answer: | The crazy one told me to excuse them for a minute while they talked. |
| Question: | Did you hear what they were saying? |
| Answer: | No. |
| Question: | What happened next? |
| Answer: | We were walking and they saw the security guard.  The crazy one took the guard's flashlight and started beating him with it. |
| Question: | What did you do? |
| Answer: | I was just standing there because I didn't know what they were going to do then.  The crazy one yelled at me, get the wallet, what the fuck was I standing there for.  I was scared and I thought they would hurt me.  I got the wallet and the other man with the braids was taking the jewelry.  I don't know how the crazy man got the jewelry, though because the man with the braids took it off the security guard.  I guess he gave it to him. |
| Question: | What did you [do] with the wallet? |
| Answer: | I heard the police say stop and I threw the wallet to the crazy one and he dropped it. |

(Tr. Jan. 14, 1998, at 10-11.)  After reading this statement into the record, Police Officer Betty
Stevens testified that Petitioner was wearing his hair in braids on the day after his arrest.  (*Id.* at
11.)

16

Clause when his nontestifying co-defendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the co-defendant." *Richardson v. Marsh,* 481 U.S. 200, 201-02 (1987). In such a situation, "the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant" that limiting instructions are inadequate. *Bruton*, 391 U.S. at 135.

Petitioner, however, had a bench trial, and *Bruton* is not applicable to bench trials. *Rogers v. McMackin*, 884 F.2d 252 (6th Cir. 1989). "To apply *Bruton* to bench trials would be to conclude that judges, like jurors, may well be incapable of separating evidence properly admitted against one defendant from evidence admitted against another." *Id*. at 257.

The trial court agreed with Petitioner's attorney that it could not consider James Harrison's statement against Petitioner, (Tr. Jan. 15, 1998, at 73-74), and it does not appear that the trial court relied on Harrison's statement when determining Petitioner's guilt or innocence.[5]

---

[5] The trial court made the following findings of fact and conclusions of law concerning Petitioner:

> The Court doesn't doubt for a moment that the evening started out for Mr. Pasley as one where he and his wife were going out for the evening with Mr. El and whoever Mr. El was with or that it ended with respect to Mrs. Pasley and Mr. El and his friend in the form and fashion that they described. But that also does not create any doubt in my mind whatsoever that the facts that I find to be credible and believable came from the witness stand through Gregory Pitts and that it was Mr. Pasley who said give me all you got and took the flashlight from his back.

> As to who actually hit him upside the head, it doesn't matter. Number One and Number Two, Mr. Williams and Mr. Pasley were acting in concert at that time. They shared a common intent and that was to take what was Mr. Pitts' for themselves.

17

Thus, Petitioner's fourth and sixth claims lack merit, and the state courts' rejection of the claims were not contrary to, or unreasonable applications of, Supreme Court precedent.

### E.  Denial of Motion for Severance

Petitioner alleges next that the trial court violated his rights to a fair trial and due process of law by not granting his motion for severance based on antagonistic defenses.  Petitioner moved for a separate trial, but the trial court determined that he had made an insufficient showing to justify severance.   The trial court agreed with the prosecutor that, although the defenses may have been antagonistic, they were not mutually exclusive.  (Tr. May 20, 1997, at 49-57.)   The Michigan Court of Appeals adjudicated Petitioner's claim on the merits and concluded that the trial court did not err or abuse its discretion by denying Petitioner's motion for a separate trial.

The United States Court of Appeals for the Sixth Circuit has explained that

> [a] defendant is not entitled to severance merely because he might have had a better chance of acquittal in a separate trial.  *See Zafiro v. United States*, 506 U.S. 534, 540 (1993).  Nor does he have a right to a separate trial merely because defendants present antagonistic defenses.  *See United States v. Day*, 789 F.2d 1217, 1224 (6th Cir. 1986) (holding that absent some indication that the alleged antagonistic defendants misled or confused the jury, the mere fact that co-defendants blame each other does not compel severance).  Courts should grant a severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.  Granting or denying severance is within the trial judge's discretion.  *See Glinsey v. Parker*, 491 F.2d 337, 343 (6th Cir.1974).  And, a state trial court's alleged abuse of discretion, without more, is not a constitutional violation.  *See Sinistaj v. Burt*, 66 F.3d 804, 805, 808 (6th Cir. 1995).
>
> A petitioner seeking habeas relief on the basis of a trial court's failure to sever his trial from his co-defendant's bears a very heavy burden.  *See United*

------

(Tr. Jan. 15, 1998, at 78-79.)

18

> *States v. Horton*, 847 F.2d 313, 316 (6th Cir. 1988). As a general rule, joint trials are favored. *See United States v. Dempsey*, 733 F.2d 392, 398 (6th Cir. 1984). Jurors are presumed to follow the instructions of the court and to give each defendant's case separate consideration. *See Francis v. Franklin,* 471 U.S. 307, 324 n. 9 (1985). The mere potential for confusion, standing alone, will not outweigh society's interest in the speedy and efficient resolution of criminal trials. *See United States v. Moore*, 917 F.2d 215, 222 (6th Cir. 1990).

*Stanford v. Parker*, 266 F.3d 442, 458-59 (6th Cir. 2001).

Petitioner did not testify, but his wife testified on his behalf that she and Petitioner had gone out for the evening with another couple shortly before the robbery. She claimed that she and Petitioner got into an argument and that Petitioner then walked away from her. About the same time, she noticed some people wrestling on the ground. One of the people got up and reached for Petitioner, who pushed the person away. That was the last time she saw Petitioner on the night in question. (Tr. Jan. 15, 1998, at 38-48.) Defense counsel argued that Petitioner was guilty of being in the wrong place at the wrong time. (*Id*. at 68.)

Co-defendant Larry Williams testified that he and the complainant "got high" on the night of the robbery and that he took possession of the complainant's jewelry after the two of them agreed to pawn the jewelry for money to buy more drugs. They subsequently got into a fight when the complainant said that he had to leave for work and Williams insisted on getting high. Williams claimed that he did not know Petitioner and that Petitioner was not with him on the night in question. (*Id*. at 16-33.)

Co-defendant James Harrison did not testify, but his statement to the police was admitted in evidence. As previously explained, the statement implicated Petitioner in the crime as the man with braids who took the complainant's jewelry. (Tr. Jan. 14, 1998, at 10-11.)

19

The Michigan Court of Appeals made the following observations about the three defenses:

> [T]he defenses actually advanced at trial by Pasley and Williams were not antagonistic or mutually exclusive. Both defendants claimed that they had never met one another prior to their arrests. Williams presented a version of events explaining how he came into possession of complainant's property that was not inconsistent with Pasley's theory that he was arrested simply because he was in the vicinity of the other defendants when the police arrived. Although a statement made by the third perpetrator to the police implicated Pasley and Williams in the crime, the trial court specifically indicated that it would not consider this statement when determining Pasley's guilt or innocence.

*Pasley*, Mich. Ct. App. No. 210712, at 3 (citations omitted).

In conclusion, Petitioner's defense was not antagonistic to Williams' defense, and although Harrison's statement to the police implicated Petitioner, the trial court presumably was capable of not using Harrison's statement against Petitioner. The state court's conclusion, therefore, was not contrary to, or an unreasonable application of, any Supreme Court decision, and Petitioner has no right to relief on the basis of his sixth claim.

### F.  Defense Counsel

The seventh and final habeas claim alleges that Petitioner's attorney was ineffective because he failed to assert that the police lacked probable cause to arrest Petitioner.

### 1.  Exhaustion of State Remedies

Respondent argues that Petitioner's claim is procedurally defaulted, because Petitioner did not raise the claim at all levels of state court review and is precluded from doing so now. While it is true that Petitioner styled his claim as a Fourth Amendment claim on state collateral review, the latter part of his argument alleged that he was denied his Sixth Amendment right to effective assistance of counsel when his attorney did not argue against his illegal arrest. The

20

Court therefore deems the claim exhausted.  Even if Petitioner did not exhaust state remedies for all his claims, the seventh claim lacks merit, and a habeas petition may be denied on the merits "notwithstanding the failure to the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  Accordingly, the Court will proceed to address Petitioner's claim.

### 2. *Strickland* **and** *Morrison*

State prisoners generally may not raise Fourth Amendment claims on habeas review, *Stone v. Powell*, 428 U.S. 465, 494 (1976), but they "may assert a Sixth Amendment claim based on . . . counsel's failure to move for the suppression of evidence that should have been excluded under the Fourth Amendment."  *Northrop v. Trippett*, 265 F.3d 372, 378 (6th Cir. 2001) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986)).  To establish ineffective assistance of counsel under the Sixth Amendment, a habeas petitioner must demonstrate that counsel's performance was deficient and that the deficient performance actually prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness."  *Id*. at 688.  The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id*. at 689.

To satisfy the prejudice prong of the Strickland test, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  "Where defense counsel's failure to litigate a Fourth

Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence . . . ." *Morrison*, 477 U.S. at 375.

### 3. The Fourth Amendment Claim

Petitioner alleges that the police lacked probable cause to arrest him, because the complainant never gave any facial or physical characteristics of the suspects and failed to mention the fact that one of them was wearing a white coat.

> It has long been true that the Fourth Amendment requires probable cause for an arrest. *See Crockett v. Cumberland College*, 316 F.3d 571, 580 (6th Cir. 2003). And it has long been true that this inquiry turns on whether the "facts and circumstances within the officer's knowledge [ ] are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Courts look at this question through the lens "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) (citations omitted); *cf. Graham* [*v. Connor,* 490 U.S. 386, 396 (1989)] (applying the same test in the context of judging the reasonableness of force used by officers).

*Lyons v. Xenia*, __ F.3d __, __, No. 03-3282, 2005 WL 1846994, at *5 (6th Cir. Aug. 4, 2005).

The evidence at trial established that the police went in pursuit of the perpetrators after obtaining a brief description of them. The police did not bring the suspects to the complainant for identification after they found them. However, the suspects were discovered in the vicinity of the robbery, they fit the description given to the police by the complainant, and Petitioner's two co-defendants were going through the complainant's wallet when the police approached them. Petitioner was standing nearby.

A reasonable police officer could have concluded that Petitioner was one of the three

22

men who robbed the complainant.  Thus, there was probable cause to arrest Petitioner.

Because Petitioner's Fourth Amendment claim lacks merit, his attorney's failure to challenge Petitioner's arrest did not fall below an objective standard of reasonableness.  The state court's conclusion that trial counsel was not deficient did not result in a decision that was contrary to, or an unreasonable application of, *Strickland* and *Kimmelman*.  Petitioner has no right to habeas relief on the basis of his final claim.

### IV.  Conclusion

For all the reasons given above, the application for a writ of habeas corpus [Doc. #4] is DENIED.  Respondent's motion for an enlargement of time [Doc. #12] is GRANTED.


s/John Corbett O'Meara                                    
John Corbett O'Meara
United States District Judge


Dated:  September 20, 2005